### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

**YASMIL MINAYA**

**v.**

**UNITED STATES OF AMERICA**

Civ. No. 21-18050 (KM)

**OPINION**

     Yasmil Minaya was convicted by a jury of heroin trafficking charges and is currently serving a 24-year sentence of imprisonment. That conviction was affirmed on appeal. *United States v. Minaya*, 827 F. App'x 232, 237 (3d Cir. 2020). Now he has filed a Section 2255 motion in which he seeks to vacate his conviction or sentence, essentially repackaging his rejected arguments on appeal as claims of ineffective assistance of counsel. For the reasons stated herein, that motion is denied.[1]

     Before addressing the merits, I make the following general observations. The evidence, including wiretapped conversations, was characterized by the Third Circuit as overwhelming, and I concur. I observed trial counsel's performance before, during, and after trial. Counsel was, if anything, quite aggressive; in no sense could he be accused of lack of zeal. His cross-examinations were thorough. While his legal arguments were not always successful, I never had any sense that he had overlooked a meritorious issue. One defense, the "joint venture" theory for suppressing a foreign wiretap, creatively if ultimately unsuccessfully pressed the boundaries of existing Third Circuit law. Counsel's Sentencing Guidelines arguments, too, had some

---

[1] Throughout this Opinion, "DE __" refers to the docket entries in this § 2255 proceeding, Civ. No. 21-18050. References to the docket entries in the underlying criminal case, Crim. No. 17-359, are specifically identified as such.

success. The defendant was facing a mandatory life sentence under the Guidelines as calculated in the presentence report. Counsel managed to persuade the Court to vary downward substantially from the base offense level; to reduce the role-in-the-offense adjustment by one point; and to eliminate an upward adjustment for importation. He was unable to persuade the court to reduce the role in the offense by an additional point, or to remove an upward adjustment for obstruction of justice based on threatening communications to a witness. Mr. Minaya's § 2255 motion, however, fails to articulate any specific manner in which the Court's adverse rulings can be attributed to substandard performance by counsel.

## I.      Legal Standards: § 2255 Motion Alleging Ineffective Assistance of Counsel

A prisoner in federal custody under sentence of a federal court "may move the court which imposed the sentence to vacate, set aside or correct the sentence" upon three grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; or (3) "that the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255(a).

The defendant bears the burden of establishing entitlement to § 2255 relief, *see United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005), and "must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982); *see also United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014) ("a motion pursuant to 28 U.S.C. § 2255 is reviewed much less favorably than a direct appeal[.]"). In considering a § 2255 motion, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (internal quotation marks and citation omitted). Pro se habeas petitions are liberally construed. *Rainey v. Varner*, 603 F.3d 189, 198 (3d Cir. 2010) (citation omitted). The Court may deny the motion without holding an evidentiary hearing if the motion and the

files and records of the case conclusively show that the prisoner is not entitled to relief. *See* 28 U.S.C. § 2255(b); *Liu v. United States*, No. 11-4646, 2013 WL 4538293, at *9 (D.N.J. Aug. 26, 2013) (citing *Booth*, 432 F.3d at 545–46).

Where, as here, the petitioner asserts that counsel rendered ineffective assistance, more particular standards apply. The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A claim of ineffective assistance has two essential components. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness," *id.* at 687–88, meaning he "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. In evaluating counsel's performance, a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"; thus, the court's scrutiny of counsel's performance "must be highly deferential." *Id.* at 689.

Second, a petitioner must establish prejudice, *i.e.,* "a reasonable probability that the result of the trial would have been different" absent the deficient act or omission. *Id.* at 687.

Those issues can be decided in either order. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

## II.   Discussion

Mr. Minaya's motion asserts the following claims:

CLAIM ONE: Counsel was ineffective for failing to obtain from the Dominican Republic information referenced by Movant that would have effectively demonstrated that the Dominican authorities and the DEA did in fact engaged in an impermissible joint venture which, in turn, would have precluded the admission of the wiretap evidence.

CLAIM TWO: Counsel was ineffective for failing to properly object to the court's failure to explain its consideration of the 18 U.S.C. § 3553(a) factors.

CLAIM THREE: Counsel was ineffective for failing to properly object to the drug type that has been charged in the indictment, and to the drug amount attributed to Movant.

CLAIM FOUR: Counsel was ineffective for failing to properly object to the PSR's finding that Movant was an organizer or leader of a criminal activity that involved five or more participants.

CLAIM FIVE: Movant's sentence was imposed in violation of the Constitution and laws of the United States.

(Memorandum of Law, DE 1-1 at 1, 13, 15, 19, 21; *see also* Motion, DE 1 at 3, 18.) He seeks an evidentiary hearing. (DE 1-1 at 22, DE 1 at 18)[2]

---

[2]    In his reply brief ("Reply", DE 12), Mr. Minaya has added a claim that his counsel was ineffective in advising Movant to go to trial "despite [his desire to plead guilty." (*Id.* at 3) Or rather, despite *not* having asserted that claim in his briefing, he takes the government to task for failing to respond to it. I conclude (a) that no such claim was fairly raised, and (b) that in any event, the record would preclude any such claim.

In his Reply, Mr. Minaya states that this was "Claim One." True, in the printed Form AO 243 (DE 1), there is a one-sentence statement of "GROUND ONE: Counsel was ineffective for advising Movant to proceed to trial despite Movant's desire to plead guilty." But that is it. The body of the motion, submitted as a lengthy attachment to the form Motion, lists Ground One as the Dominican wiretap issue. (DE 1 at 18) In that attachment, there is no more than a passing reference in the Procedural History to the defendant going to trial despite having "previously" wanted to plead guilty. (*Id.* at 15)

Nor is this claim saved by cross-reference. Under the AO 243 form's one-sentence statement of the issue, the entire discussion consists of this: "Please see attached Memorandum of Law." The Memorandum of Law, however, does *not* list this as one of the claims for relief. The five claims for relief are very clearly listed. (*See* Claims One through Five, quoted in text, *supra.*) Mr. Minaya's Reply states that he "dedicated more than ten pages of his Memorandum of Law in support of his § 2255 motion to arguing that his attorney was ineffective for improperly advising him to proceed to trial in spite of his desire to plead guilty." (Reply at 3) That is simply untrue; the cited pages are wholly devoted to the Dominican wiretap issue.

The reference in the Memorandum of Law that comes closest to such a claim is a single sentence in the boilerplate recitation of legal standards governing a § 2255 claim:

Finally, a defendant who claims that ineffective advice led him to reject a plea offer must show that but for ineffective assistance of counsel, he

would have accepted the plea, and that the conviction or sentence or both under the terms of the plea offer would have been less severe than under the judgment and sentence that were imposed. *See* Lafler v. Cooper, 566 U.S. 156, 132 S. Ct. 1376, 1385, 182 L.Ed. 2d 398 (2012).

(DE 1-1 at 2)

Other than that boilerplate reference to a generic legal standard, the Memorandum of law contains not a single fact or argument concerning Minaya's desire to plead guilty or his attorney's advice to go to trial. Even in the Reply, no allegedly ineffective advice is described or even referred to. Rather, the Reply argues that the government's "silence" constitutes irrefutable evidence that defendant's position is meritorious—while still omitting any factual support.

The Court recognizes its duty to a litigant who is now pro se, and has reviewed the record with an eye to establishing such a claim. No such claim can be gleaned from the record, which in fact establishes the opposite. The Court held two *Frye* hearings, the first on November 18, 2018, and the second in the midst of jury selection on April 22, 2019. (17cr359 docket entries 74, 177, 115, 128) Far from overbearing his client's desire to plead guilty, counsel was urging his client to accept, not reject, the plea offer. Mr. Minaya acknowledged on the record that the decision to go to trial was his alone. He attested to the accuracy of his lawyer's description of a meeting in which the lawyer urged him to take the plea offer.

At the earlier *Frye* hearing, counsel explicitly questioned his client on the record. He elicited that he had advised Mr. Minaya that his chances of prevailing at trial were slim, and that he would likely face a sentence in excess of 20 years:

> MR. BROWNSTEIN: And I told you that the 14 years is on the table until the date it was going to expire, and you decided not -- to go to trial knowing that you're going to get at least 20 years or more; is that correct?

> THE DEFENDANT: Yes.

> MR. BROWNSTEIN: I also advised you that the Giants have a better chance of winning the Super Bowl than you winning this trial?

> THE DEFENDANT: Yes.

> MR. BROWNSTEIN: And you still decided to reject this agreement and go forward?

> THE DEFENDANT: Yes, sir.

(11/14/2018 Tr., 17cr359 docket entry 177 at 22).

And here is the transcript of the latter *Frye* hearing:

THE COURT: . . ..  When was the last plea offer made? Don't tell me anything about it, just tell me when.

[AUSA] WANGENHEIM: Certainly, Your Honor. It was a plea offer dated March 13th, 2019, with an expiration of March 15th.

_____

THE COURT: And so let me ask first you, Mr. Brownstein, did you receive that plea offer from the government?

[DEFENSE COUNSEL] BROWNSTEIN: Yes, Your Honor.

THE COURT: And did you discuss it with your client?

MR. BROWNSTEIN: Yes. I attempted to convince him to take it.

THE COURT: Well, that's neither here nor there. I just need to know whether you discussed it.

MR. BROWNSTEIN: Yes, I did. He understood it, and he rejected it.

THE COURT: Okay. How recently did you discuss it with him?

MR. BROWNSTEIN: Well, we only had – that same day when we got the offer, talked with him the next day, it expired the day after. It was his decision. I think we got the offer on the 13th, which was a Wednesday.

THE COURT: Yes.

MR. BROWNSTEIN: I went to see him on Thursday, and the offer expired on Friday.

THE COURT: Did you feel you had enough of an opportunity to explain it to him and discuss it with him?

MR. BROWNSTEIN: Absolutely.

THE COURT: Okay. Now I'm going to ask your client some yes-or-no questions. Mr. Minaya, just yes or no because we don't want you talking about the facts or the plea agreement, which is – or the plea offer, which is none of my business. I just want to know, has your lawyer described what happened accurately?

THE DEFENDANT: Yes.

THE COURT: Okay. So you got the plea offer, you had time to discuss it with your lawyer, correct?

THE DEFENDANT: We got like an hour, you know.

THE COURT: Okay. And did he explain it to you so you understood it?

THE DEFENDANT: Yes.

THE COURT: And you decided to say no, right?

THE DEFENDANT: Yes.

THE COURT: Okay. And that was your choice?

THE DEFENDANT: Yes.

(4/22/2019 Tr. at 48–50, 17cr359 docket entry 128.)

The defendant now claims that there is an "issue of fact" because, in response to his § 2255 motion, the government sought and obtained a privilege waiver and interviewed defense counsel. The mere existence of such an interview does not raise an issue of fact as to the underlying merits.

6

### A.     Relitigation

Generally speaking, § 2255 may not be used to relitigate issues already decided by a higher court on direct appeal. *See United States v. DeRewal*, 10 F.3d 100, 105 n.4 (3d Cir. 1993) (§ 2255 "generally 'may not be employed to relitigate questions which were raised and considered on direct appeal.'") (quoting *Barton v. United States*, 791 F.2d 265, 267 (2d Cir. 1986)); *accord United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014). And indeed most, if not all, of these substantive issues were decided against Mr. Minaya on direct appeal. *See United States v. Minaya*, 827 F. App'x 232, 235 (3d Cir. 2020).

On direct appeal, the Third Circuit affirmed Mr. Minaya's conviction. In particular, it upheld this court's denial of his motion to suppress the results of a wiretap in the Dominican Republic as the product of a "joint venture" between the U.S. and foreign authorities, and held that there was no procedural error in limiting the evidentiary hearing to one witness. Further, the Court of Appeals rejected a "cumulative error" claim based on a grab-bag of purported errors at trial. And finally, it rejected challenges to the sentence based on the calculated amount of heroin; the application of upward adjustments based on a managerial role in the offense and obstruction of justice; the court's alleged failure to give meaningful consideration to the factors under 18 U.S.C. § 3553(a); and the alleged overall unreasonableness of the sentence based on, inter alia, allegedly "erroneous facts" and disparities with the sentences of coconspirators. *Id.* at 235–38.

The current § 2255 motion simply repackages those rejected claims as claims of ineffective assistance. Such repackaging, without more, will not suffice:

> Further, the fastening of an ineffectiveness preamble to barred appellate claims does not revive them for section 2255 purposes.

---

To complete the procedural history, the government, belatedly noting the presence of this new issue in the Reply, sought leave to make a supplemental submission. I denied that application, stating in my order that I would determine later whether additional submissions were required. (DE 15) For the reasons expressed above, I find that additional submissions are not required.

> *See, e.g., White v. United States,* 2012 WL 2119104, *5 (S.D.N.Y.
> June 12, 2012) ("[section 2255] [p]etitioner unsuccessfully argued
> on direct appeal that the jury instruction was incorrect and cannot
> now repackage that procedurally barred claim as an ineffective
> assistance of counsel claim"); *Azzara v. United States,* 2011 WL
> 5025010, at *6 (S.D.N.Y. Oct.20, 2011) (section 2255 petitioner's
> "arguments … based on claims pursued on direct appeal,
> repackaged … as ineffective assistance of counsel claims … are
> procedurally barred").

*Pascual v. United States*, No. 14 CV 6025 RJD, 2015 WL 6506739, at *2
(E.D.N.Y. Oct. 27, 2015). *See also United States v. Cooley*, No. CIV. 07-308,
2009 WL 1408123, at *3 (W.D. Pa. May 19, 2009) ("Each of the errors that form
the basis for Cooley's ineffective assistance claim have already been submitted
to the Third Circuit and rejected.…Cooley now attempts to repackage those
same alleged errors as a claim for ineffective assistance of counsel in hopes of
receiving yet another bite at the apple.").

An adverse ruling cannot simply be assumed to give rise to a separate
claim for deficient attorney performance. "To conclude as much would be to say
that every attorney who has ever lost an argument (i.e., every attorney), was
thereby providing ineffective assistance of counsel in violation of the Sixth
Amendment." *United States v. Terry*, Civ. No. 14-1006, 2015 WL 4255527, at *7
(W.D. Pa. July 14, 2015). Rather, when assessing deficient performance in the
context of an ineffective assistance claim, "[a]s a threshold matter, the court
must determine whether the underlying claim was meritorious." *U.S. v. Baird,*
218 F.3d 221, 225 (3d Cir. 2000) (citing *United States v. Mannino,* 212 F.3d
835, 839–40 (3d Cir. 2000)). As counsel does not act deficiently or create
prejudice by failing to raise or prevail on a meritless argument, *see U.S. v.
Sanchez,* 53 F. App'x 208, 210 (3rd Cir. 2002), arguments previously rejected
on direct appeal will typically not survive a subsequent *Strickland* analysis. *See
Cvjeticanin v. United States*, No. 19-549, 2022 WL 280185, at *6 (D.N.J. Jan.
31, 2022) (rejecting ineffective assistance claim where petitioner "attempts to

relitigate claims which this Court and the Court of Appeals rejected by repackaging them as claims of ineffective assistance of counsel").

Mr. Minaya's claims, then, are not favorably postured and could perhaps be rejected at the outset. I nevertheless analyze them under *Strickland* standards. For the reasons stated in the following sections, I find that Mr. Minaya has not demonstrated that any meritorious claim was lost through bad lawyering.

**B.      The Merits**

**CLAIM ONE: Counsel was ineffective for failing to obtain from the Dominican Republic information referenced by Movant that would have effectively demonstrated that the Dominican authorities and the DEA did in fact engaged in an impermissible joint venture which, in turn, would have precluded the admission of the wiretap evidence.**

Before trial, Mr. Minaya moved to suppress evidence derived from a wiretap conducted in the Dominican Republic, pursuant to authorization from the Dominican authorities. His argument was that the wiretap was in reality a "joint venture" of the U.S. and Dominican authorities and therefore should be subject to Fourth Amendment constraints. In discovery he received various reports and documents concerning the origins and conduct of the investigation, which he introduced in evidence at the suppression hearing. The Court confined the hearing to one witness, DEA Special Agent Roxana K. Pulido. The Court denied suppression in a written opinion. ("Suppression Op.", DE 111. I do not repeat the analysis of that opinion, which is incorporated here by reference.)

After trial, Mr. Minaya moved for reconsideration of the denial of the pretrial suppression motion. Here, he cited additional evidence that had been developed at trial, including testimony of other DEA agents and a member of the Dominican police. In addition, Minaya proffered affidavits of two persons who had acted as monitors on other Dominican wiretaps outside the time frame of the relevant De La Cruz wiretap. In a written opinion, I again analyzed the claims and ruled that the Dominican wiretap had not been a joint venture

9

with U.S. authorities. ("Posttrial Op.", DE 156. I do not repeat the analysis of that opinion, which is incorporated here by reference.)

On direct appeal, Mr. Minaya revived his contentions concerning the Dominican wiretap and the procedural fairness of the suppression proceedings. The U.S. Court of Appeals for the Third Circuit rejected those contentions (and others) in a written opinion, which I quote at length:

First, Minaya argues that the District Court violated his due process rights by limiting the witnesses ordered to appear at the suppression hearing on the foreign wiretaps and limiting his cross examination of Special Agent Pulido. We are unpersuaded. Minaya agreed to the witness procedures that the District Court used at the suppression hearing, so he waived his right to now object to those procedures on appeal. *See United States v. James*, 955 F.3d 336, 344–45 (3d Cir. 2020). Regardless, the District Court did not abuse its discretion in either limiting the scope of the hearing or limiting Minaya's opportunity to cross examine Special Agent Pulido. *See United States v. Skulsky*, 786 F.2d 558, 562 (3d Cir. 1986) (applying the abuse of discretion standard for limiting the scope of an evidentiary hearing); *United States v. Fattah*, 914 F.3d 112, 179 (3d Cir. 2019) (same for limiting cross examination). The District Court reasoned that it wanted to hear from Special Agent Pulido, who had firsthand knowledge of the wiretaps and the investigation into Cruz, before deciding whether to allow Minaya to call more witnesses who might not be needed to enable the court to rule on the motion. Further, Minaya did not object to the court's limiting his time to cross examine Special Agent Pulido. And Minaya spent his entire opportunity to do so questioning Pulido about the wording of the DEA reports on the Cruz wiretaps in an attempt to show impermissible cooperation. If Minaya failed to elicit the testimony that he sought, the fault is his own.

Second, Minaya asserts that the District Court should have suppressed the evidence gleaned from the wiretaps because it was the fruit of an impermissible "joint venture" between United States and Dominican authorities. Minaya argues that the court improperly assessed who led and executed the wiretap, discounted DEA reports that portrayed the wiretap as a cooperative investigation, and ignored the fact that DEA agents were frequently "in the wire room" with Dominican authorities. Reply Br. 7 (quotation marks omitted).

We conclude that the District Court did not abuse its discretion in admitting the wiretap evidence. Foreign wiretap evidence ordered by "foreign officials acting on their own to enforce foreign law" is admissible in federal criminal cases unless (i) the conduct of the foreign officials "shock[s] the … conscience" or (ii) the foreign officials are acting as "agents … of United States law enforcement" or are cooperating with United States agents in a way "designed to evade constitutional requirements" — what some of our sister Courts of Appeals refer to as an impermissible "joint venture." *United States v. Maturo*, 982 F.2d 57, 60–61 (2d Cir. 1992) (quotation marks omitted); *see also United States v. Callaway*, 446 F.2d 753, 755 (3d Cir. 1971) (holding that the Fourth Amendment exclusionary rule does not apply to searches in a foreign country which "were conducted by foreign law enforcement … who were not acting in connection or cooperation with" United States "authorities[,] and the conduct involved was not the type that would shock the conscience of our courts").

We have never adopted the "joint venture" doctrine, but, even if we had, Minaya's arguments fall short. We agree with the District Court that Dominican officials initiated the investigation of Cruz and independently sought and executed the wiretaps. Minaya failed to present any witnesses or other evidence indicating that United States authorities controlled or were "active participants in the [wiretaps] operation." *United States v. Valdivia*, 680 F.3d 33, 52 (1st Cir. 2012). Standing alone, foreign law enforcement officials sharing information gleaned from their own activities with United States authorities — even if cloaked in cooperative terms in agency reports — is not indicative of an impermissible joint venture, and thus, the District Court did not abuse its discretion in admitting the wiretap evidence. For the same reasons, we discern no error in the District Court's denial of Minaya's motion to reconsider the suppression of the wiretap evidence.

*United States v. Minaya*, 827 F. App'x 232, 235–37 (3d Cir. 2020).

The Third Circuit, then, affirmed this Court's rulings. In doing so, it rejected on substantive grounds every claim that Minaya reasserts here in the guise of ineffective assistance. The question, then, becomes this: Was it trial counsel's ineffectiveness that led this Court and the Third Circuit to rule as they did? The answer is clearly no.

Mr. Minaya proffers that his counsel "was ineffective for failing to obtain from the Dominican Republic information referenced by Movant that would have" caused the district court to find the wiretap was a U.S./Dominican "joint venture." In particular, Minaya cites "credible information, *i.e.,* the first-hand account of Leny Pascual, a paralegal who works as a monitor and intelligence analyst for the National Department of Drug Control ("DNCD"), and who was assigned to the wire room that monitored De La Cruz's activities." (DE 1-1 at 8) Pascual's affidavit is attached as an exhibit. (DE 1-2)

As the government points out, Pascual's 2019 affidavit *was* submitted to the Court and was fully discussed by the Court in connection with the posttrial reconsideration motion:

> With his reply brief, for the first time, defense counsel proffers two affidavits . . . . (DE 149) . . . .
>
>  [T]hese materials would not justify reconsideration of the court's ruling on suppression. The two affiants state that they have worked as wiretap monitors at the relevant facility. They did not, however, participate in the DR Wiretap that is at issue here. One, a law student, worked from 2010–13, and the other from 2017–19, largely or wholly outside the relevant time frame. They state very generally that DEA agents directed or participated in local investigations, and that it was "common" for an investigation to originate from the DEA.
>
> These averments are at a high level of generality. There is reason to doubt that a person employed as a wiretap monitor is qualified to opine as to the joint venture status, or not, of an investigation. More to the point, these witnesses have no information about this particular investigation; they did not participate in, and they have no information about, the Dominican authorities' investigation of Luna Cruz or application to wiretap his phone. . . .
>
> This information, even taken at face value, would not alter my suppression rulings to the effect that the Luna Cruz wiretap was not a joint venture with the DEA or a subterfuge to circumvent U.S. law as to Minaya. The motion for reconsideration of the court's rulings denying suppression of the Luna Cruz wiretap is denied.

(Posttrial Op., DE 156 at 9) So the Pascual affidavit, while not considered on the original motion to suppress, was considered in connection with the posttrial motion, was discussed by the Court, and was in the record that was before the Third Circuit on appeal.

Pascual is the law student/paralegal referred to in the Posttrial Opinion who was employed from 2010 to 2013. As noted, this did not overlap the period of the De La Cruz wiretap, which was conducted pursuant to an order dated November 12, 2014. (*See* Suppression Op., DE 111 at 12 n.7.) Pascual acknowledges that he had no involvement with the De La Cruz wiretap.[3]

The limitation of the initial suppression hearing to one witness is not grounds for § 2255 relief. The court held that it would hear only from Ms. Pulido, the relevant U.S. official who possessed the relevant knowledge, before deciding whether further testimony was necessary. The Third Circuit held that, irrespective of whether defense counsel had consented, this was an appropriate exercise of the Court's discretion. (*See* p.7, *supra*.) My decision would have been no different. At any rate, the court revisited the suppression issue with the benefit of a full trial record and supplemental evidence, and denied it; any arguable attorney error did not give rise to any prejudice.

In short, there is still no sufficient showing that counsel's representation was deficient. And even assuming that counsel should have introduced the Pascual affidavit earlier, at the original suppression hearing, there is no plausible claim of prejudice. For the reasons expressed in my posttrial opinion, that affidavit had no bearing on the Court's analysis.[4] Nor has Mr. Minaya

---

[3]     Minaya's motion states that Pascual "was assigned to the wire room that monitored De La Cruz's activities." (DE 1-1 at 8) That statement, while perhaps literally true, has a misleading implication. Pascual states that he worked in that room, but he did so a year before the De La Cruz wiretap, in which he had no involvement.

[4]     The government proffers that Minaya's counsel, in an interview, stated that he used all the information Minaya gave him, and that he explored and investigated the possibility of calling other witnesses from the Dominican Republic, but none were willing to testify. I do not take into account this representation, which has not been subjected to cross-examination.

identified any further information to which Mr. Pascual's information would supposedly have led.

The § 2255 motion, insofar as it asserts ineffective assistance in connection with efforts to suppress the Dominican wiretap, is denied.

**CLAIM THREE[5] Counsel was ineffective for failing to properly object to the drug type that has been charged in the indictment, and to the drug amount attributed to Movant.**

The PSR found that the conspiratorial offense had involved in excess of 90 kilograms of heroin, for a base offense level of 38. *See* U.S.S.G. § 2D1.1(a)(5) and (c)(1). The Court accepted that calculation, and the Third Circuit upheld that ruling on appeal. *See* 827 F. App'x at 237 ("The District Court correctly calculated Minaya's Guidelines range based on evidence presented at trial of the large amounts of heroin distributed by the conspiracy . . . .")

Minaya's claim that counsel did not "properly" object is opaque. Counsel filed a memorandum of law in which he objected to that calculation (DE 153) and he argued the point at sentencing ("Sentencing Tr.", DE 166 at 5–8, 10–12) It is true, of course, that his argument did not technically prevail; the Court, being familiar with the entire trial record, ruled that the jointly undertaken criminal activity encompassed trafficking in well over 90 kilograms of heroin. (DE 12–14 (citing U.S.S.G. § 1B1.13 definition of relevant conduct)).

But defense counsel's arguments regarding the drug amount did in a sense prevail. Later in the sentencing proceeding, I accepted his equitable argument that the amount of heroin attributable to his client should be commensurate with that attributed to the coconspirators who did not go to trial. I granted a structured downward variance of 4 points, based on the drug amount of 10–30 kilograms that was attributed to certain codefendants. (Sentencing Tr. at 58–59)[6]

---

[5]    Claim Two is discussed out of order, following Claim Four.

[6]    Mr. De La Cruz's drug amount was brought in line with that of other codefendants by means of a variance. His guidelines offense level nevertheless remained higher than that of certain codefendants. He portrays this as an inexplicable disparity, but there are several explanations. For example, he, unlike them, did not

14

By any measure, this result reflected dogged and effective advocacy by counsel. *A fortiori,* there was no prejudice resulting from the initial attribution of over 90 kilograms, since the effect of that calculation was undone by the downward variance.

The § 2255 motion, insofar as it asserts ineffective assistance in connection with the Guidelines calculation of over 90 kilograms of heroin, is denied.

**CLAIM FOUR: Counsel was ineffective for failing to properly object to the PSR's finding that Movant was an organizer or leader of a criminal activity that involved five or more participants.**

Once again, Mr. Minaya cites a PSR finding to which his counsel objected, both orally and in writing, and cryptically asserts that his counsel did not "properly" object. The PSR would have imposed an upward adjustment of 4 points based on Mr. Minaya's role as an "organizer or leader" of criminal activity involving five or more persons. *See* U.S.S.G. § 3B1.1(a). Defense counsel objected in writing (DE 153) and orally (Sentencing Tr. DE 166 at 14–20) that Mr. De La Cruz, not his client, met that description. I accepted his argument in part. Based on ample evidence that five or more persons were involved, and that Mr. Minaya played at least an organizational role, I imposed a 3 (not 4) point upward adjustment for being an "organizer or manager" of such activity. U.S.S.G. § 3B1.1(b). The Third Circuit upheld that finding. 827 F. App'x at 237 ("The District Court correctly calculated Minaya's Guidelines range based on evidence presented at trial of the large amounts of heroin distributed by the conspiracy, correctly imposed a "manager or supervisor" role enhancement based on Minaya's activities coordinating transfers of large amounts of drugs and sums of money . . . .").

---

plead guilty, so he was denied a 3-point downward adjustment for acceptance of responsibility, U.S.S.G. § 3E1.1. In addition, he received an upward adjustment for his managerial role, and another for obstruction of justice, based on his threatening of a witness. (Sentencing Tr. DE 166 at 31 *et seq.*)

Mr. Minaya would of course have preferred for his attorney to have obtained a still larger reduction. He fails, however, to point to any deficiency in his attorney's advocacy that was to blame for the result. And prejudice, once again, is lacking; as the Third Circuit held, the Court's imposition of the 3-point adjustment was dictated by ample evidence of record.

The § 2255 motion, insofar as it asserts ineffective assistance in connection with the § 3B1.1 role adjustment, is denied.

**CLAIM TWO: Counsel was ineffective for failing to properly object to the court's failure to explain its consideration of the 18 U.S.C. § 3553(a) factors.**

**CLAIM FIVE: Movant's sentence was imposed in violation of the Constitution and laws of the United States.**

As he did on appeal, Mr. Minaya objects more generally that the sentence was unreasonable or contrary to law. Again, he asserts that his attorney, despite his vigorous advocacy, failed to "properly object." Like the earlier issues, this claim amounts to little more than attaching a label of ineffective assistance to a claim of error that has already been roundly rejected by the Third Circuit:

> To satisfy procedural reasonableness, a sentencing court must "(1) correctly calculate[ ] the defendant's advisory Guidelines range; (2) appropriately consider[ ] any motions for a departure"; and (3) give "meaningful consideration to the sentencing factors" in § 3553(a). *United States v. Freeman*, 763 F.3d 322, 335 (3d Cir. 2014). The District Court correctly calculated Minaya's Guidelines range based on evidence presented at trial of the large amounts of heroin distributed by the conspiracy, correctly imposed a "manager or supervisor" role enhancement based on Minaya's activities coordinating transfers of large amounts of drugs and sums of money, and correctly added an obstruction enhancement because Minaya sent Cruz two letters clearly intended to threaten Cruz for testifying against him. And the District Court "gave meaningful consideration," *id.*, to the factors set forth in § 3553(a) in imposing Minaya's sentence. Therefore, the sentence was procedurally reasonable.

> In evaluating substantive reasonableness, we consider "whether the record as a whole reflects rational and meaningful consideration of the" § 3553(a) factors, *United States v. Grier*, 475 F.3d 556, 571 (3d Cir. 2007) (en banc), and we will affirm "unless no reasonable sentencing court would have imposed the same sentence ... for the reasons the district court provided," *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009). Minaya did not object to the District Court's consideration of the § 3553(a) factors, so we review only for plain error. *See Foster*, 891 F.3d at 113 n.15. Minaya fails to support his argument that his sentence was based on "erroneous facts," let alone point to factual errors that meet the plain error standard. Further, while the District Court may consider sentencing disparities between co-defendants in imposing its sentence, it is not required to do so. *See United States v. Parker*, 462 F.3d 273, 276–78 (3d Cir. 2006). And here, the District Court did vary downward from life to 288 months based on Minaya's co-defendants having stipulated to lower drug quantities. The sentence was also substantively reasonable.

*Minaya,* 827 F. App'x at 237–38.

A review of the sentencing transcript reveals that the Court appropriately analyzed the § 3553(a) factors in selecting an appropriate sentence. (Sentencing Tr. DE 166 at 53–59) It is true that defense counsel did not then object to the Court's analysis, but that analysis followed many transcript pages of advocacy by both sides for their positions as to an appropriate sentence. In its analysis, the Court discussed those arguments, accepting some and rejecting others. Mr. Minaya offers nothing to suggest that a further objection, at that point, would have had any substantial basis or caused the Court to change its mind. The Third Circuit's affirmance confirms that it would not. There was no deficient performance and, *a fortiori*, no prejudice.

The § 2255 motion, insofar as it asserts ineffective assistance in connection with the selection of sentence, is denied.

## III.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2255. A certificate of appealability may issue

"only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Here, reasonable jurists would not find the Court's habeas ruling debatable. Accordingly, no certificate of appealability shall issue.

## III.   CONCLUSION

For the foregoing reasons, Mr. Minaya's § 2255 motion is denied without an evidentiary hearing, because the motion and the files and records of the case conclusively show that the prisoner is not entitled to relief. *See* 28 U.S.C. § 2255(b). No certificate of appealability shall issue.  An appropriate order follows.

Dated:  May 10, 2023

/s/ Kevin McNulty

_____

KEVIN MCNULTY
United States District Judge

18